UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Not Present                                Not Present

**Proceedings:**    (IN CHAMBERS) - PLAINTIFF CAVU EXPERIENCES (AMER) LLC F/K/A MAG US LOUNGE MANAGEMENT LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 114, filed on January 3, 2025)

DEFENDANT/PLAINTIFF ONTARIO INTERNATIONAL AIRPORT AUTHORITY'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Dkt. 115, filed on January 3, 2025)

## I.    INTRODUCTION

On June 16, 2021, plaintiff Cavu Experiences (Amer) LLC, f/k/a MAG US Lounge Management LLC ("plaintiff" or "MAG") filed suit in this Court against defendant Ontario International Airport Authority ("OIAA") in MAG US Lounge Management LLC v. Ontario International Airport Authority, Case No. 2:21-cv-04909-CAS-RAOx ("MAG I"), for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) declaratory relief.  MAG I, dkt. 4.  On February 4, 2022, MAG I was dismissed for lack of subject matter jurisdiction.  Dkt. 22.  Thereafter, MAG appealed to the Ninth Circuit.  Dkt. 23.

On July 19, 2022, OIAA filed suit in San Bernardino County Superior Court against MAG and Does 1-50 for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) common counts; and (4) declaratory relief. See Ontario International Airport Authority v. MAG US Lounge Management LLC, Case

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

No. 5:22-cv-01926-CAS-RAOx ("MAG II"), dkt. 1-1 ("OIAA Compl."). On October 31, 2022, MAG removed MAG II to this Court. Id.

On December 14, 2022, the Ninth Circuit reversed the dismissal of MAG I, finding that diversity of citizenship existed between the parties. MAG I, dkts. 27-28. MAG I was thereafter reassigned to this Court. Dkt. 29. On December 29, 2022, MAG II was transferred to this Court as a related case. MAG II, dkt. 21.

On January 30, 2023, the Court granted MAG's motion to consolidate MAG I and MAG II. MAG I, dkt. 47.

On March 4, 2024, MAG filed its first amended complaint, asserting five claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; (4) fraudulent concealment; and (5) fraudulent misrepresentation. Dkt. 78 ("FAC"). On March 18, 2024, OIAA moved to dismiss the FAC's fourth and fifth claims. Dkt. 81. On April 22, 2024, the Court granted OIAA's motion and granted MAG leave to amend. Dkt. 90.

On September 3, 2024, MAG filed its operative second amended complaint, asserting six claims for relief: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) declaratory relief; (4) breach of mandatory duty under California's Public Records Act ("CPRA"), Cal. Gov't Code § 7920.000 *et seq.*, pursuant to Cal. Gov't Code § 815.6; (5) breach of mandatory duty based on OIAA's Ethics Policy and RFP Guidelines, pursuant to Cal. Gov't Code § 815.6; and (6) promissory estoppel. Dkt. 101 ("MAG SAC").

On January 3, 2025, MAG filed a motion for partial summary judgment. Dkt. 114 ("MAG MSJ"). On the same day, OIAA filed a motion for partial summary judgment. Dkt. 115 ("OIAA MSJ"). On February 3, 2025, OIAA filed its opposition to MAG's motion. Dkt. 119 ("MAG Opp."). On the same day, MAG filed its opposition to OIAA's motion. Dkt. 124 ("OIAA Opp."). On February 18, 2025, MAG filed its reply, dkt. 128 ("MAG Reply"), as well as its response to OIAA's statement of genuine disputes, dkt. 129 ("MAG SDF"). On the same day, OIAA filed its reply, dkt. 127 ("OIAA Reply"), as well as its response to MAG's statement of genuine disputes, dkt. 131 ("OIAA SDF"). MAG filed evidentiary objections, to which OIAA filed a response. Dkts. 126, 130, 132.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

On March 10, 2025, the Court held a hearing.  Presently before the Court are
MAG's and OIAA's cross-motions for summary judgment.  Having carefully considered
the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and
to which evidentiary objections, if any, have been overruled.[1]

On June 20, 2018, MAG and OIAA "entered into a Common Use Airport Lounge
Concession Lease Agreement for Common Use Airport Loung[e] Concession and Car
Parking Services at Ontario International Airport" (the "Agreement"), with an effective
date of July 1, 2018, for a period of ten years, to commence on or about the date of the
opening of a second lounge or June 1, 2019, whichever was earlier.  MAG SDF ¶ 1.  The
Agreement provided that it could be terminated for "convenience" or in the event of a
default.  Agreement §§ 2.4, 14.2.

---

[1] To the extent the Court relies on evidence to which there has been an objection, the
Court has overruled the objection to that evidence.  The Court overrules MAG's
objection #8, see dkt. 130 at 9, because as OIAA's Chief Financial Officer, John Schubert
states he has personal knowledge of the amounts paid and owed between the parties.  The
Court also overrules MAG's objection #4, see id. at 5, because Daniel Cappell offers
sufficient evidence as to his personal knowledge as to whether MAG engaged in financial
reconciliation.  Further, the alleged inconsistencies between John Schubert's 30(b)(6)
testimony and Daniel Cappell's declaration are not "clear and unambiguous."  See
Yeager v. Bowlin, 693 F.3d 1076, 1080 (9th Cir. 2012) ("[T]he sham affidavit rule
should be applied with caution").  Finally, the Court overrules MAG's objections to the
declaration of Norma Alley, see dkt. 126.  As the "Clerk of Board of Commissioners…
responsible for maintaining OIAA's official records and for responding to discovery
requests," see dkt. 115-1 ¶ 2, she shows why she has personal knowledge regarding the
process for document maintenance and production.  Further, the documents at issue,
which were prepared, maintained, and stored in OIAA's ordinary course of business, fall
into the business records exception to the hearsay rule.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Approximately one year after the Agreement was signed, while the initial Agreement remained in effect, on August 17, 2020, OIAA issued a Request for Proposals ("RFP") seeking proposals from companies to provide car parking services.  Id. ¶ 2. Section 10.4 of the RFP provides, in pertinent part:

> OIAA reserves the right to reject any or all [statements of qualifications ("SOQs")]; to waive any informality in the SOQs when doing so would be to the advantage of OIAA; to reject any unapproved alternative SOQ(s); and to reject the SOQ of any proposer who has previously failed to perform competently in any prior business relations with the OIAA.  The receipt of the SOQs shall not in any way obligate the OIAA to enter into any agreement or any other contract of any kind with any prospective proposer.

OIAA SDF ¶ 31.  The RFP Guidelines state that after individual evaluators complete their scoring sheets, "the [Evaluation] Committee will meet to discuss each proposal; make any appropriate changes; document any change; and, individually assign Total Scores for each submission."  Id. ¶ 33.  The RFP Guidelines further state that "Evaluation Committee members should feel comfortable with the justification and defense of each proposal's evaluation and scoring.  Members may not concur on any given point; however, this meeting is an opportunity for Evaluation Committee members to discuss, for example, gross differences in evaluations."  Id. ¶ 34.  After the Evaluation Committee's initial round of scoring, MAG was the highest scoring bidder.  Id. ¶ 36.  The Evaluation Committee then changed its scores, resulting in the contract being awarded to another bidder, Parking Concepts, Inc. ("PCI").  Id. ¶ 37.

Thereafter, OIAA entered into a contract with PCI to provide car parking and shuttle bus services at Ontario International Airport (the "Airport"), and this contract went into effect on March 25, 2021 (though the parties agree it was signed on April 21, 2021).  MAG SDF ¶ 3.

On April 15, 2021, OIAA sent MAG a notice of termination of the Agreement for convenience pursuant to Sections 2.4 and 2.4.1.  Id. ¶ 4.  In this notice, OIAA stated "both the Lounge Concession and the Car Parking Services at Ontario International

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Airport (ONT) under the MAG USA Agreement will terminate." Dkt. 121-8. Section 2.4 provides, in pertinent part:

> 2.4 Termination. Except as set forth below, this Agreement may be terminated for convenience by either party without cause, upon one year prior written notice to the other party delivered in accordance with this Agreement; subject to the following:

> 2.4.1 If the Authority provides the Concessionaire written notice of termination more than one (1) year prior to termination date of the Term, the Authority shall pay for the Concessionaire's unamortized portion of the (a) Concessionaire's Improvement costs in the Assigned Area(s) listed on Exhibits A-1 and A-2 if the Lounge Concession Services are being terminated, plus (b) unamortized portion of Concessionaire's Car Parking Services Costs if the Car Parking Services are being terminated, in each case on a straight line basis, ten (10) year amortization schedule. Payment must be made to the Concessionaire within thirty (30) days of the Authority's notice to terminate ("Termination Costs").

Agreement § 2.4. The parties dispute whether OIAA validly terminated the Agreement for cause on May 20, 2021, pursuant to Sections 14.1 and 14.2 of the Agreement. MAG SDF ¶ 4. The parties agree, however, that OIAA did not terminate the Agreement following one-year prior written notice to MAG on April 15, 2021 of its intent to effect such termination for convenience. Id. ¶ 5. OIAA contends that this was because "[d]uring the wind-down of the parties' relationship … it quickly became clear to OIAA that MAG was not honoring its obligations under the Agreement." Id. According to OIAA,

> MAG (i) did not and would not return the $1,181,417 overpayment, (ii) would not reimburse OIAA the $486,994 in sales taxes OIAA paid on MAG's behalf, (iii) would not reimburse OIAA the $74,774.51 in utility costs OIAA paid on MAG's behalf, (iv) would not remit to OIAA the $1,704,881 in baseline parking revenues that MAG owed to OIAA, (v) would not remit to OIAA the $735,931 in pre-book parking revenues that MAG owed to OIAA, and (vi) would not provide OIAA the information it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

needed to conduct a full and accurate financial reconciliation between the
parties.

Id. OIAA claims that based on these breaches, it properly terminated the Agreement for
cause. Id.

Following OIAA's April 15, 2021, notice of termination of the Agreement, OIAA
did not make any payments to MAG. Id. ¶ 6. The parties dispute whether "OIAA
frustrated MAG's efforts to reconcile accounts by not meaningfully or clearly responding
or engaging." Id. ¶ 7. OIAA contends that "[i]t was OIAA, not MAG that consistently
sought to engage in financial reconciliation; and it was MAG, not OIAA, that refused to
provide the data necessary for such a reconciliation to occur." Id.

MAG did not formally present a written claim for breach of Section 2.4's notice
provision under the Government Claims Act ("GCA"), Cal. Gov't Code § 945.4. OIAA
SDF ¶ 1. However, in spring 2021, MAG and OIAA exchanged correspondence related
to the one-year notice period, and on April 30, 2021, OIAA's Chief Commercial Officer,
Daniel Cappell ("Cappell"), wrote to MAG "to [i]nquire if MAG would be open to a
conversation reference a buyout of the 12 month termination period over and above the
Capital Expenditure reimbursement," which would be "under the settlement
communications provisions of the California Evidence Code." Id. As noted above,
MAG filed its original complaint against OIAA on June 16, 2021, and its second
amended complaint on September 3, 2024, after this case was remanded to this Court. Id.
¶ 2. The second amended complaint was the first pleading to assert a claim for breach of
Section 2.4's notice provision. Id.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any
material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.
56(a). The moving party bears the initial burden of identifying relevant portions of the
record that demonstrate the absence of a fact or facts necessary for one or more essential
elements of each claim upon which the moving party seeks judgment. See Celotex Corp.
v. Catrett, 477 U.S. 317, 323 (1986).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.    DISCUSSION

Although the parties have asserted multiple grounds for seeking summary judgment, the crux of their dispute arises from the fact that OIAA terminated the Agreement with MAG for convenience on April 15, 2021, but did not terminate the Agreement for cause until May 20, 2021. The central issue in this case appears to be whether OIAA acted properly when it awarded a new contract to a different parking concessionaire, PCI, with an effective date of March 25, 2021, or whether OIAA's entry into a contract with PCI was a breach of the Agreement with MAG.

OIAA moves for summary judgment on: (1) MAG's claim for breach of contract based on Section 2.4's notice provision; (2) MAG's claim for breach of mandatory duty pursuant to the CPRA; (3) MAG's other claims for breach of mandatory duty; and (4)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

MAG's claim for promissory estoppel. OIAA MSJ at 1-2. MAG moves for summary judgment on (1) MAG's claim for breach of contract, including three separate breaches; (2) OIAA's claim for breach of contract; (3) OIAA's claim for breach of the implied covenant of good faith and fair dealing; and (4) OIAA's claim for common counts. MAG MSJ at 11. The Court discusses each claim in turn.

### A.  OIAA's MSJ

#### 1.  MAG's Breach of Contract Claim Based on Section 2.4's Notice Provision

OIAA first moves for summary judgment on MAG's breach of contract claim based on OIAA's alleged failure to provide one-year notice of termination under Section 2.4 of the Agreement. According to MAG, after OIAA terminated for convenience, it was required to comply with a one-year notice of termination period, and not terminate MAG's contract until April 19, 2022.

OIAA argues that MAG's breach of contract claim based on Section 2.4's notice provision fails because MAG failed to comply with the GCA. OIAA MSJ at 8. OIAA argues that MAG never presented this claim to OIAA for consideration and that any letters exchanged between the parties were insufficient to properly make a claim. Id. at 11. Even if the letters were adequate to comply with the GCA, OIAA argues that MAG failed to timely assert the claim in a lawsuit within two years of its accrual, as required by the GCA. Id. at 14. OIAA lastly contends that MAG not only omitted this claim and damages category from its complaint and first amended complaint, but also its Rule 26 Initial Disclosures, which have not been updated. Id.

In opposition, MAG argues that OIAA knew about Section 2.4's one-year notice of termination requirement in the months leading up to MAG filing the lawsuit, and even retained counsel to propose buying out its obligations under the notice provision before choosing to breach it. OIAA Opp. at 14. MAG therefore argues that it substantially complied with the GCA. Id. at 15. MAG asserts that OIAA sent MAG notice in April 2021 that proposed extending the 30-day notice of termination period to 90 days; MAG replied, rejecting the proposal and observing that the Agreement provides for one-year notice; and OIAA responded, stating that it agreed to the one-year notice period. Id. at 15-16. Then, MAG asserts, on April 30, 2021, OIAA tried again to shorten it, proposing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|----|------|------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

a buyout of the notice period with the advice of counsel. Id. On May 7, 2021, according to MAG, OIAA repeated the buyout proposal for the "remaining 12-month notice period." Id. Additionally, MAG argues that this claim is timely, because the breach arises out of the same conduct set out in the complaint, and thus relates back to the original complaint's filing date under Federal Rule of Civil Procedure 15. Id. at 17.

In reply, OIAA contends that MAG did not substantially comply because there "was not compliance with any of the [GCA Section 910] requirements, let alone some compliance with all of them." OIAA Reply at 3. OIAA asserts that the GCA must be satisfied even if the public entity has actual knowledge of facts that might support a claim. Id. at 4. Separately, OIAA argues that MAG did not make a "claim as presented," and does not even argue that it did so, as MAG cannot point to any communication in which it put OIAA on notice that it was filing this claim or that litigation would result if the issue was not resolved. Id. at 5-6. In regard to timeliness, OIAA asserts that in order to relate back, a new contract claim must arise from the same contract provision at issue in the prior pleading, whereas here, MAG's claim under Section 2.4's notice provision arises from a different provision and occurred at a different time. Id. 7-8.

The GCA requires that a party seeking to recover money damages from a public entity or its employees must submit a claim to the entity before filing suit in court, generally no later than six months after the cause of action accrues. Cal. Gov't Code §§ 905, 911.2, 945.4, and 950.2. Timely claim presentation is not merely a procedural requirement but is an element of the plaintiff's claim for relief. Shirk v. Vista Unified School District, 42 Cal. 4th 201, 209 (2007). A plaintiff may sue the public entity and its employees in court only after the entity has acted upon or is deemed to have rejected the claim. Id.; see Mangold v. California Public Utilities Commission, 67 F.3d 1470, 1477 (9th Cir. 1995) ("The California Tort Claims Act requires, as a condition precedent to suit against a public entity, the timely presentation of a written claim and the rejection of the claim in whole or in part."). The California Supreme Court has held that the claims filing requirements of the GCA apply to both tort and contract claims. City of Stockton v. Superior Court, 42 Cal. 4th 730, 738–41 (2007).

"Substantial compliance" with the GCA will also suffice to enable plaintiffs to state a claim for relief against a public entity. "The test for substantial compliance is whether the face of the filed claim discloses sufficient information to enable the public

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

entity to make an adequate investigation of the claim's merits and settle it without the expense of litigation." Connelly v. County of Fresno, 146 Cal. App. 4th 29, 38 (2006). So long as these purposes are effectuated, the statutory requirements "should be given a liberal construction to permit full adjudication on the merits." Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal. 4th 441, 449 (2004) (quoting Minsky v. City of Los Angeles, 11 Cal. 3d 113, 123 (1974)). Additionally, Government Code Section 911 establishes that "[a]ny defense as to the sufficiency of the claim based upon a defect or omission in the claim as presented is waived by failure to give notice of insufficiency with respect to the defect or omission as provided in Section 910.8[.]" A "document constitutes a 'claim as presented'... if it discloses the existence of a claim which will result in a lawsuit against the entity if it is not satisfactorily resolved." Green v. State Ctr. Cmty. Coll. Dist., 34 Cal. App. 4th 1348, 1355 (1995) (citing Phillips v. Desert Hosp. Dist., 49 Cal. 3d 699, 705 (1989)).

The Court acknowledges that courts have differed in their interpretation of the presentation requirement of the GCA. Some courts have narrowly construed the GCA to find that correspondence cannot constitute "substantial compliance" or a "claim as presented." See, e.g., Dilts v. Cantua Elementary Sch. Dist., 189 Cal. App. 3d 27, 35–36 (Ct. App. 1987) (holding that a series of written correspondence does not constitute a claim within the meaning of the GCA); Olson v. Manhattan Beach Unified Sch. Dist., 17 Cal. App. 5th 1052, 1062 (Ct. App. 2017) (holding that a letter notifying a public entity of a breach of contract is not a "claim as presented" because it did not "threaten litigation if the contractual breaches are not remedied"). Other courts, by contrast, have found correspondence to either be substantially compliant with the GCA or to otherwise constitute a "claim as presented" pursuant to Section 911, triggering the public entity's duty to notify the claimant of the technical deficiencies. See, e.g., Gen. Sec. Servs. Corp. v. Cnty. of Fresno, 815 F. Supp. 2d 1123, 1140 (E.D. Cal. 2011) (finding plaintiff's letter to be substantially compliant with the GCA); All. Fin. v. City & Cnty. of San Francisco, 64 Cal. App. 4th 635, 647 (1998) ("A communication to the public entity that a claim has accrued and that the claimant intends to enforce it suffices, even though the communication fails to notify the public entity that a lawsuit is imminent.").

The Court finds the cases construing the provisions of the GCA to permit correspondence to comply with its provisions to be more persuasive, as indicated in its February 13, 2023 order. See dkt. 51. In Foster v. McFadden, 30 Cal. App. 3d 943, 948

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

(Ct. App. 1973), the California Court of Appeal found that the plaintiff's letter "performed the function of a claim" because it "accomplished the two principal purposes of a sufficient claim" by affording the public entity the "opportunity to make a prompt investigation of the accident occasioning the letter" and giving the public entity the "opportunity to settle without suit, if it so desired." Foster, 30 Cal. App. 3d at 948. Foster was described as "directly [o]n point" by the California Supreme Court in Phillips, 49 Cal. 3d at 710.

Here, the Court finds that undisputed facts demonstrate that the GCA's notice of claim requirements were satisfied by the parties' correspondence in April and May 2021. Accordingly, the Court applies "a liberal construction [of the GCA] to permit full adjudication on the merits." Stockett, 34 Cal. 4th at 449. Specifically, the Court finds that correspondence between Cappell and MAG's Chief Executive Officer, Martin Jones ("Jones"), qualifies as a "claim as presented" as a matter of law. See Simms v. Bear Valley Cmty. Healthcare Dist., 80 Cal. App. 5th 391, 401, n.3 (2022) (holding that the determination of whether a letter is a claim under the GCA is a question of law). After back-and-forth correspondence between the parties regarding the length of the notice period under Section 2.4, Cappell wrote the following to Jones on April 30, 2021:

> Thank you for your letter April 26ᵗʰ 2021, prior to responding, I am writing to enquire if MAG would be open to a conversation reference a buyout of the 12 month termination period over and above the Capital Expenditure reimbursement. If MAG are interested in having a discussion please advise times that are suitable for you, and if not, please confirm in order that we can respond to your letter. Possible discussions about a buyout would be under the settlement communications provisions of the California Evidence Code we earlier identified on this matter.

Dkt. 124-18 at 74. Cappell confirmed in his deposition that he had "legal input" when writing this proposal. Id. at 53. On May 7, 2021, Cappell sent a letter to Jones that referenced the buyout proposal again, stating that OIAA "will facilitate buyout discussions post May 19ᵗʰ, 2021." Dkt. 124-20 at 24. Additionally, in response to MAG's request for admissions on May 1, 2023, OIAA denied that MAG submitted a "claim" under the GCA, but "admit[ted] that OIAA investigated the facts and positions

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|-------------------------------------------------------------------|------|----------------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

set forth in correspondence between OIAA and MAG that occurred prior to MAG's [filing of the lawsuit]." Dkt. 114-7 at 11.

Viewing this evidence in the light most favorable to OIAA, the Court finds that MAG's correspondence "performed the function of a claim," because it accomplished the GCA's purposes: it gave OIAA the opportunity to investigate its compliance with Section 2.4's notice provision and gave OIAA the opportunity to settle. See Foster, 30 Cal. App. 3d at 948. OIAA admitted that it investigated the "facts and positions" of the spring 2021 correspondence, which included discussion of the length of the notice period and buyout proposal. Further, Cappell's responses to Jones demonstrate that OIAA had the opportunity to settle this dispute without trial, as OIAA itself explicitly requested "discussions about a buyout… under the settlement communications provisions of the California Evidence Code." It is further undisputed that OIAA did not notify MAG that its correspondence might have been deficient under the GCA, thereby waiving any defense that there were deficiencies pursuant to Section 911. Accordingly, the Court finds that summary judgment in OIAA's favor is not appropriate on the grounds of deficient compliance with the GCA, because MAG complied with the GCA as a matter of law. See Stockett, 34 Cal. 4th at 446 ("As the purpose of the claim is to give the government entity notice sufficient for it to investigate and evaluate the claim, not to eliminate meritorious actions, the claims statute should not be applied to snare the unwary where its purpose has been satisfied.") (citations and quotations omitted).

At oral argument, counsel for OIAA cited La v. San Mateo Cnty. Transit Dist., No. 14-CV-01768-WHO, 2014 WL 6682476, at *6 (N.D. Cal. Nov. 25, 2014) and All. Fin., 64 Cal. App. 4th at 647, as standing for the proposition that before a claim can be presented, the dispute between the parties must be ripe. Although these cases discuss ripeness, they do not appear to support OIAA's argument. In La, the letter offered to prove compliance with the GCA's presentation requirement was found not to be sufficient because it "did not concern [plaintiff's] potential legal claims against defendants," but merely requested documentation. La, 2014 WL 6682476, at *6. Further, the Court based its decision on the fact that "[a]t no point during the course of this correspondence did [plaintiff] convey to [defendant], either explicitly or implicitly, that a claim for monetary damages exists and that litigation may ensue, or that a claim is ripe and that litigation can be expected if the matter is not resolved." Id. (citations omitted). The use of the term "or" suggests that ripeness is not a prerequisite in all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|------|------|------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

instances. As for All. Fin., although the California Court of Appeal found that the claim at issue was ripe, the case does not appear to stand for OIAA's asserted proposition. In fact, in All. Fin., the letter was found to be sufficient as a "claim as presented" because it "communicate[d] a basis for a lawsuit and communicate[d] an intent to sue—at some time—if the claim is not resolved. [The California Supreme Court's decision in] Phillips requires no more." All. Fin., 64 Cal. App. 4th at 648. Accordingly, the Court is not persuaded by OIAA's argument that the correspondence over Section 2.4's notice provision, as well as Section 5.1.10 (see Part IV(B)(1)(a)), fails under the GCA because the disputes were unripe at the time.

Separately, at oral argument, counsel for OIAA cited Gen. Sec. Servs. Corp., 815 F. Supp. 2d at 1138, to assert that the correspondence between the parties did not sufficiently threaten litigation. However, the correspondence regarding Section 2.4's notice provision expressly referenced settlement discussions, and the correspondence regarding Section 5.10.1, written by MAG's attorneys, effectively stated that OIAA would be in breach if it awarded the new contract to PCI, after OIAA notified MAG that it intended to do so. See dkt. 124-18 at 74; dkt. 121-6 at 5. Moreover, "a communication to the public entity that a claim has accrued and that the claimant intends to enforce it suffices, even though the communication fails to notify the public entity that a lawsuit is imminent." All. Fin., 64 Cal. App. 4th at 647.

Turning to OIAA's argument about the timeliness of MAG's filing suit for breach of Section 2.4's notice provision, the Court finds that the claim at issue relates back to the conduct alleged in MAG's original complaint. "An amendment to a pleading relates back to the date of the original pleading when… the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "To relate back, the original and amended pleadings [must] share a common core of operative facts so that the adverse party has fair notice of the transaction, occurrence, or conduct called into question. The relation back doctrine of Rule 15(c) is liberally applied." ASARCO, LLC v. Union Pac. R. Co., 765 F.3d 999, 1004 (9th Cir. 2014) (quotations and citations omitted).

The Court finds that MAG's claim that OIAA breached Section 2.4's notice provision arises from the same conduct set out in the original pleading, which asserted that OIAA breached Section 2.4 by failing to pay termination costs, i.e., MAG's capital

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|---------------------------------------------------------------------|------|----------------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

expenditures, by May 19, 2021. Dkt. 4 ¶ 37. Plainly, and applying Rule 15(c) "liberally," both breaches arise from OIAA's termination of the Agreement. See Fin. Indem. Co. v. Messick, No. 2:21-CV-01585-DAD-AC, 2023 WL 2696779, at *5 (E.D. Cal. Mar. 29, 2023) (concluding that the plaintiff's reformation of contract claim arose out of the same conduct set forth in the original pleading when the original complaint sought declaratory relief under the same insurance contract involving the same parties). Accordingly, because the original complaint was timely filed on June 16, 2021, the Court finds that pursuant to Rule 15(c), MAG's claim for breach of Section 2.4's notice provision, included in its SAC on September 3, 2024, relates back to the original complaint and should be deemed to be timely. Therefore, summary judgment is not appropriate on these grounds.

Finally, the Court considers OIAA's assertion that MAG failed to supplement its Rule 26 Initial Disclosures with its claim for $3.2 million in lost profits, which it now seeks in damages resulting from the breach of Section 2.4's notice provision. It appears that OIAA makes this argument in support of its assertion that MAG failed to comply with the GCA. It is unclear, however, if OIAA moves to exclude evidence of MAG's lost profits damages on this basis. Regardless, it appears to the Court that, despite MAG's failure to supplement its Initial Disclosures, MAG filed its SAC on September 3, 2024, when discovery was ongoing. The Advisory Committee notes to Rule 26(e) explain that there is "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process." Accordingly, the Court finds that the supplemental information requested here—that MAG seeks $3.2 million in lost profits damages, in addition to its original damages claim—was made known to OIAA in writing by the filing of MAG's SAC. Therefore, supplemental disclosure was not required by Rule 26(e).

> 2.  MAG's Claim for Breach of Mandatory Duty Under the CPRA

OIAA seeks summary judgment on MAG's breach of mandatory duty claim under the CPRA. According to MAG, after OIAA awarded the new contract to PCI, MAG requested records of the RFP scoring process under the CPRA to protest the award of the contract to PCI. OIAA argues that MAG's claim for breach of mandatory duty under the CPRA fails because (1) it is untimely; (2) the exclusive remedy for CPRA violations is the writ of mandamus; (3) the CPRA does not impose mandatory, non-discretionary

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

duties; and (4) it was not designed to protect against commercial injuries.  OIAA MSJ at 16-20.

In opposition, MAG argues that its non-contract claims are timely.  OIAA Opp. at 19.  MAG contends that it did not discover that OIAA withheld responsive CPRA documents until OIAA produced them in December 2023 and January 2024.  Id. at 20.  Additionally, MAG argues that its non-contract claims relate back to the references to a "sham RFP" in its original complaint, which was promptly amended after MAG discovered that OIAA withheld documents.  Id. at 20-21.  MAG then argues that the CPRA imposes mandatory duties, as it states that an agency "shall" determine whether a request seeks copies of disclosable public records, notify the requester, and respond to denied requests in writing.  Id. at 21 (citing Cal. Gov't Code §§ 7922.535(a), 7922.540(c)).  Next, MAG asserts that the writ of mandamus is not the exclusive remedy for CPRA violations, and the CPRA does not conflict with § 815.6.  Id. at 22.  Finally, MAG argues that its claim satisfies the CPRA's purposes because MAG is a member of the public that suffered a dignitary harm and seeks to expose OIAA's practices.  Id. at 24.

In reply, OIAA reiterates that MAG's non-contract claims are untimely.  OIAA Reply at 9.  Next, OIAA argues that the term "shall" in the CPRA does not show a mandatory duty, pointing to other language in the statute that permits discretion.  Id. at 11.  OIAA asserts that MAG cites no case finding a mandatory duty in the CPRA.  Id.

As a threshold matter, the Court finds that MAG's non-contract claims are not barred by the statute of limitations.  "An otherwise time-barred claim in an amended pleading is deemed timely if it relates back to the date of a timely original pleading."  ASARCO, 765 F.3d at 1004.  As MAG alleged in its original complaint that OIAA conducted a "sham RFP," see dkt. 4 ¶ 4, the Court finds that MAG's claims for breach of mandatory duty and promissory estoppel arise from the same conduct alleged in the original pleading.  Therefore, the non-contract claims relate back to the timely-filed claims under Rule 15(c) and are not barred by the statute of limitations.

Turning to MAG's CPRA-based claim for breach of mandatory duty, the Court finds that MAG's claim for damages under § 815.6 is barred by Filarsky, in which the California Supreme Court held that the CPRA was "the exclusive procedure for litigating the issue of a public agency's obligation to disclose records to a member of the public in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

these circumstances." <u>Filarsky v. Superior Ct.</u>, 28 Cal. 4th 419, 423 (2002).  Therefore, MAG is barred from asserting this claim under § 815.6.  Even if MAG attempted to assert this claim under the CPRA itself, "[t]he CPRA's judicial remedy is limited to a requestor's action to determine whether a particular record or class of records must be disclosed." <u>Cnty. of Santa Clara v. Superior Ct.</u>, 171 Cal. App. 4th 119, 130 (2009). Under the CPRA, a plaintiff is entitled "only to injunctive or declaratory relief and costs, not monetary damages." <u>Bagdasaryan v. City of Los Angeles</u>, No. 2:15-CV-01008-JLS-KES, 2020 WL 2770193, at *14 (C.D. Cal. Feb. 4, 2020), <u>report and recommendation adopted</u>, No. 2:15-CV-01008-JLS-KES, 2020 WL 2770689 (C.D. Cal. Mar. 24, 2020). Because MAG seeks damages for this claim, <u>see</u> dkt. 101 ¶ 74, and not injunctive or declaratory relief, the Court finds that even if MAG asserted it under the CPRA, the claim would not be cognizable. <u>See also</u> <u>Hammerlord v. Filner</u>, No. 11-CV-01564 JLS NLS, 2013 WL 4046676, at *6 (S.D. Cal. Aug. 9, 2013) (dismissing CPRA claim for monetary damages because "the CPRA does not provide for monetary damages").

Accordingly, the Court finds that MAG's CPRA-based claim for breach of mandatory duty under § 815.6 fails as a matter of law.  OIAA is therefore entitled to summary judgment on this claim.

### 3.    MAG's Other Claims for Breach of Mandatory Duty

OIAA next moves on MAG's other breach of mandatory duty claims.  According to MAG, the RFP scoring process that resulted in the contract award to PCI failed to comply with mandatory duties imposed by the Ontario Municipal Code, OIAA's Ethics Policy, and OIAA's RFP Guidelines.  Specifically, MAG contends that OIAA's evaluators failed to fulfill their duties to act with integrity and score MAG's proposal solely on the published RFP evaluation criteria.  OIAA argues that these claims fail because (1) they are untimely; (2) the Ontario Municipal Code does not apply to OIAA; (3) the Ethics Policy and RFP Guidelines are not "enactments" under § 815.6; and (4) they were not designed to prevent MAG's commercial injury.  OIAA MSJ at 20-23.

In opposition, MAG argues that OIAA's Ethics Policy is modeled on Ontario Municipal Code § 2-6.03, and states that its employees are "required to exemplify high standards of integrity… and are responsible to ensure that they conduct procurement activity consistent with OIAA policy and procedures and applicable federal, state, local

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**   **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

laws and regulations." OIAA Opp. at 24. MAG contends that the Ethics Policy mandates that OIAA employees comply with all California and Ontario laws, which require any bidding process to be "honest" and be "*seen to be honest*." Id. at 25 (citing Advanced Real Est. Servs., Inc. v. Superior Ct., 196 Cal. App. 4th 338, 352 (2011) (emphasis in the original)). Additionally, according to MAG, the Acknowledgement that OIAA required its RFP evaluators to sign uses mandatory language to explain an evaluator's role, including that their evaluation "must be based on the published evaluation criteria," and not on outside influences. Id. Finally, MAG contends that these documents are designed to protect the public, including the economic injury suffered by MAG. Id. at 26.

In reply, OIAA contends that MAG's arguments are irrelevant, because the Ethics Policy and RFP Guidelines are not "enactments" under § 815.6. OIAA Reply at 13.

California Government Code § 815.6 establishes liability for violation of a mandatory duty and provides:

Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty.

Cal. Gov't Code § 815.6. Courts apply a three-pronged test to establish a prima facie basis for liability for the violation of a mandatory duty: "(1) An enactment must impose a mandatory, not discretionary, duty; (2) The enactment must be intended to protect against the kind of risk of injury suffered by the plaintiff; and (3) The breach of the mandatory duty must be a proximate cause of the plaintiff's injury." Sumner Peck Ranch, Inc. v. Bureau of Reclamation, 823 F. Supp. 715, 726 (E.D. Cal. 1993); see also Haggis v. City of Los Angeles, 993 P.2d 983, 987 (Cal. 2000) ("Section 815.6 requires that the enactment at issue be obligatory, rather than merely discretionary or permissive, in its directions to the public entity; it must require, rather than merely authorize or permit, that a particular action be taken or not taken.").

Here, the Court finds that MAG's claims based on OIAA's Ethics Policy and RFP Guidelines fail at the first step of this test. MAG has not established that either of these

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

authorities are "enactments," defined as "a constitutional provision, statute, charter provision, ordinance or regulation." Cal. Gov't Code § 810.6. "This definition is intended to refer to all measures of a formal legislative or quasi-legislative nature." Wilson v. Cnty. of San Diego, 91 Cal. App. 4th 974, 982 (2001). MAG has not established that either the Ethics Policy or the RFP Guidelines are legislative or quasi-legislative in nature. MAG appears to argue that the Ethics Policy requires all OIAA employees to comply with all of California law, which includes a judicial decision, Advanced Real Est. Servs., 196 Cal. App. 4th at 352, requiring that bidding processes are "honest" and "*seen to be honest*." OIAA Opp. at 24-25 (emphasis in the original). However, this judicial decision is not an enactment, as it is not legislative or quasi-legislative in nature. Accordingly, the Court finds that neither the Ethics Policy nor the RFP Guidelines are enactments imposing mandatory duties under § 815.6. See also Quiroz v. Cate, No. C 11-0016 LHK PR, 2012 WL 3236490, at *3 (N.D. Cal. Aug. 6, 2012) (finding that the California Department of Corrections and Rehabilitation Operations Manual, Code of Conduct, and Code of Ethics "appear to be general declarations of policy goals, and thus do not impose a mandatory duty within the meaning of § 815.6"). This claim therefore fails as a matter of law and OIAA is entitled to summary judgment.

    4.    MAG's Claim for Promissory Estoppel

OIAA next moves on MAG's promissory estoppel claim. According to MAG, even if OIAA was entitled to award the new contract to PCI under the Agreement, OIAA was estopped from doing so because MAG received the highest score in the proposal evaluation process. OIAA argues that MAG's promissory estoppel claim fails because (1) MAG failed to timely present it to OIAA; (2) OIAA did not make a "clear and unambiguous" promise to award the contract to the highest scoring bidder; (3) OIAA retained discretion to award the contract to any bidder and change its initial scoring; and (4) MAG was not the highest scoring bidder overall. OIAA MSJ at 23-25.

In opposition, MAG argues that OIAA made a clear and definite promise to the bidders when its RFP included "28 pages of details and over 100 pages of exhibits regarding the criteria for the job of the winning bidder." OIAA Opp. at 27. MAG then distinguishes the instant case from cases where the public entity reserved its right to reject all bids and in fact rejected all bids. Id. Additionally, MAG argues that whether or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|----------------------------------------------------------------------|------|----------------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

not it was the highest scoring bidder is a disputed issue. Id. at 26. The record shows, according to MAG, that OIAA did not want to award MAG the contract and conspired to "knowingly select the lowest scoring operator," thereafter creating substitute scoring sheets after announcing the award of the contract to PCI. Id.

In reply, OIAA distinguishes the authority relied upon by MAG, arguing that here, there is no charter or statute that required OIAA to award the contract to the highest scoring bidder. OIAA Reply at 14. Further, OIAA asserts that this was not a process whereby bidders provided irrevocable proposals for specific dollar amounts, but was rather a process where bidders provided unverified revenue projections. Id.

Promissory estoppel acts to make "a promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance" binding, if justice so requires. Kajima/Ray Wilson v. Los Angeles Metro. Transp. Authority, 23 Cal. 4th 305, 310 (2000) (citation omitted). Under California law, promissory estoppel requires: "(1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." Laks v. Coast Fed. Sav. & Loan Assn., 60 Cal. App. 3d 885, 890 (1976).

The Court acknowledges that in the context of bidding for public contracts, the California Court of Appeal recognized a claim for promissory estoppel in Swinerton & Walberg Co. v. City of Inglewood-L.A. Cnty. Civic Ctr. Auth., 40 Cal. App. 3d 98, 104 (1974), where the public entity awarded a public works contract to a bidder who was not the "lowest responsible bidder." However, in Swinerton, the public entity had "[c]learly… promised in its solicitation of bids to award the contract to the lowest responsible bidder," which established the first element of the plaintiff's claim: a clear and unambiguous promise. See id. The public entity in Swinerton was also statutorily required to award public contracts to the "lowest responsible bidder." Id. at 105. Here, by contrast, MAG has not identified a clear and unambiguous promise in the RFP to award the contract to the highest scoring bidder. Instead of identifying such a promise, MAG points to "28 pages of details and over 100 pages of exhibits." OIAA Opp. at 27. Therefore, the Court finds that, unlike the public entity in Swinerton, OIAA had not clearly promised in its RFP to award the contract to the highest scoring bidder, let alone

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

the highest scoring bidder in the initial scoring.  Because there is no general implied promise to award a contract to the lowest bidder (or as applied here, the highest scoring bidder), see Pac. Architects Collaborative v. State of California, 100 Cal. App. 3d 110, 123 (1979), and MAG fails to identify a clear and unambiguous promise, MAG's claim for promissory estoppel fails as a matter of law.

    **B.**    **MAG's MSJ**

        1.   <u>MAG's Breach of Contract Claim</u>

     MAG contends that OIAA breached the Agreement in its efforts to replace MAG with PCI.  MAG argues that it is entitled to summary judgment on the first three elements of its breach of contract claim, that there was a contract, that MAG performed, and that OIAA breached.  MAG MSJ at 17.  According to MAG, there is no genuine dispute as to three breaches by OIAA: (1) that OIAA contracted with PCI for services governed by its existing Agreement with MAG before the Agreement terminated, in violation of Section 5.10.1; (2) that OIAA did not provide MAG with one-year prior written notice as required by Section 2.4 before terminating the Agreement; and (3) that OIAA did not pay MAG termination costs owed pursuant to Section 2.4.1 of the Agreement.  Id.

        *a.  OIAA Contracting with PCI While Agreement in Effect*
     MAG argues that Section 5.10.1 of the Agreement prohibited OIAA from contracting with other vendors for similar services, and that OIAA breached this portion of the Agreement by awarding an RFP to PCI to operate car parking services MAG had been providing, just three years into the ten-year term of the Agreement.  Id. at 18.  MAG contends that "OIAA effectively contracted with PCI on March 25, 2021," when the contract took effect.  Id. at 18-19.  On this date, MAG argues, its Agreement with OIAA remained in force, as OIAA had not sent its terminal notice yet, and even if it had, the Agreement would have subsequently terminated a year later.  Id. at 19.  MAG argues that "OIAA's premature and accelerated termination of the Agreement on June 20, 2021, also came too late to avoid this breach."  Id.

     In opposition, OIAA contends that MAG's claim that OIAA breached on this basis fails for reasons: (1) MAG did not present this claim as required by the GCA; (2) the PCI contract did not include the same car parking services that MAG was providing;

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|--------------------------------------------------------------------|------|----------------|
| Title    | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

and (3) by the time OIAA entered the contract with PCI, MAG had already breached the Agreement, rendering Section 5.10.1 inoperative.  MAG Opp. at 2-3.

In reply, MAG contends that each of these arguments fails.  MAG Reply at 8-9. MAG argues that it substantially complied with the GCA.  Id.  Because OIAA knew about and investigated MAG's contract claim, MAG argues, it cannot now argue that it was not properly noticed.  Id.  MAG argues that Section 5.10.1 prohibits OIAA from contracting with any other entity to perform similar services and that the services contracted for in the OIAA-PCI contract are plainly similar.  Id. at 13.  MAG lastly argues that it cannot have been in breach at the time of contracting because OIAA relies on a letter dated May 13, 2021, which was almost two months after it entered into its contract with PCI.  Id.

As an initial matter, the Court finds that MAG complied with the GCA's presentation requirements for its PCI-related claim as a matter of law.  See generally Part IV(A)(1).  Specifically, MAG's Protest Letter, dated February 23, 2021, "performed the function of a claim" because it "accomplished the two principal purposes of a sufficient claim" by affording the public entity the "opportunity to make a prompt investigation of the accident occasioning the letter" and giving the public entity the "opportunity to settle without suit, if it so desired."  Foster, 30 Cal. App. 3d at 948.  In pertinent part, the Protest Letter sent to OIAA states as follows:

> MAG's existing contract also states that OIAA shall not contract with any other entity to perform Car Parking Services provided by MAG.  This therefore restricts OIAA's ability to switch providers of these services.  It also significantly brings into question the proposed start date and validity of the new PCI contract[.]

Dkt. 121-6 at 5.  The letter was signed by MAG's counsel.  Id. at 7.  The Court finds that OIAA's receipt of this information gave it the opportunity to investigate its compliance with Section 5.10.1, and specifically warned OIAA that it would be in breach of this provision if it moved forward with awarding the contract to PCI.  Further, OIAA admitted that it investigated the "facts and positions" of the spring 2021 correspondence, which appears to have included the Protest Letter.  The Protest Letter gave OIAA an opportunity to settle this matter without trial because it attempted to avoid the breach in the first place.  Accordingly, the Protest Letter constitutes a claim as presented because it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

was "written notice that a claim for monetary damages exists and that litigation may ensue." Phillips, 49 Cal. 3d at 709 (citations omitted).

Viewing these facts in the light most favorable to OIAA, the Court finds that it is undisputed that the Protest Letter put OIAA on notice that a claim for monetary damages would accrue if OIAA moved forward with the PCI contract and that MAG intended to enforce that claim. It is also undisputed that the Protest Letter gave OIAA an opportunity to investigate and settle this matter. Accordingly, the Court finds that summary judgment as to the GCA presentation element of MAG's claim is appropriate because MAG complied with the GCA as a matter of law. See Shirk, 42 Cal. 4th at 209 ("Timely claim presentation… is an element of the plaintiff's claim for relief."); Simms, 80 Cal. App. 5th at 401, n.3 (whether a letter is a claim under the GCA is a question of law).

The Court further concludes that to find that OIAA's contract with PCI was an event of breach, there must be no dispute of fact as to two issues: first, the Agreement must have been in force at the time OIAA's contract with PCI took effect, and second, OIAA's contract with PCI must have been for services similar to the services provided for in the Agreement, such that it violated Section 5.10.1. OIAA disputes that either of these conditions was established.

The Court concludes that the Agreement was in effect when OIAA contracted with PCI, because MAG was not properly considered in breach of the Agreement at that time. OIAA argues that MAG was already in breach because as of February 28, 2021, MAG had not paid or reimbursed OIAA for the alleged overpayment, sales taxes owed by MAG and paid by OIAA, utility costs owed by MAG and paid by OIAA, certain baseline car parking revenues, and certain incremental pre-book car parking revenues. MAG Opp. at 12. The Court finds this argument unavailing. OIAA contends that the reference date of February 28, 2021 "is important, because it precedes by nearly a month the effective date of OIAA's parking contract with PCI." Id. However, OIAA also states that it communicated these alleged breaches to MAG in a letter dated May 13, 2021. Id. In this letter, OIAA explained that failure to cure "will constitute a breach and default of the Agreement by MAG." Dkt. 121-10 at 2. The Court concludes that the May 13, 2021 letter's forward-looking language makes clear that OIAA did not consider MAG already in default. Additionally, pursuant to Section 14.1 of the Agreement, OIAA was permitted to terminate for cause if "one or more of the following events of default occur," with

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**       **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Section 14.1.4 providing that default would occur "[i]f [MAG] fails to pay any other monetary obligation required hereunder within thirty calendar days after written notice thereof …." Agreement §§ 14.1, 14.1.4.  Given that written notice was first provided on May 13, 2021, MAG could not have been in default before thirty days from that time, which was after OIAA contracted with PCI.  Accordingly, the Court concludes that there is no genuine dispute of fact that MAG was not already in breach at the time of its contract with PCI.

The Court further concludes that to constitute an event of breach of Section 5.10.1 of the Agreement, OIAA need only have entered into a contract with another entity to "perform the Car Parking Services or any services similar to, or designed to provide, the Car Parking Services during the Car Parking Services Term."  Agreement § 5.10.1. Accordingly, OIAA's contention that its contract with PCI did not include the same services is unpersuasive.  OIAA's contract with PCI provides that "Concessionaire has been selected to manage and operate the car parking operations, valet parking, car parking services and all shuttle bus operations at the Airport …."  Dkt. 121-7 at 5.  In the Agreement, "'Car Parking Services' means certain parking services and products to be provided by Concessionaire that includes, but is not limited to, pre-book parking reservations, trading and valet/"drop & go" parking or other such services and products …." Agreement § 3.1.  The Court concludes that the contract with PCI therefore covers "services similar to … the Car Parking Services" as defined by the Agreement. Agreement § 5.10.1.  Thus, OIAA entering into a contract with PCI to provide these services with an effective date of March, 25, 2021, before OIAA terminated the Agreement for convenience or cause, constituted an event of breach.[2]  MAG SDF ¶ 3. Even though the notice of termination for convenience was on April 15, 2021, it would not have been effective for one year, and therefore, the Agreement remained in effect when the PCI contract was signed, whether deemed to be March 25, 2021 or April 21, 2021.  OIAA's argument does not create a genuine dispute of material fact that the

---

[2] The parties agree that the effective date of OIAA's contract with PCI was March 25, 2021, but OIAA contends that the contract was executed on April 21, 2021.  MAG SDF ¶ 3.  The parties agree that the notice of termination for convenience was the first notice sent and that it was sent on April 15, 2021. Id. ¶ 4.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|--------------------------------------------------------------------|------|----------------|
| Title    | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

services it contracted for in the PCI contract were not "similar to" those covered by the Agreement.

The Court concludes that summary judgment on this issue for MAG is appropriate, given that MAG sufficiently presented the issue under the GCA, the Agreement was still in effect when OIAA contracted with PCI because MAG was not noticed of its alleged breach until after the contract became effective, and the contract between OIAA and PCI covered services "similar to" those to be exclusively provided by MAG.

> *b.  OIAA's Failure to Give One-Year Prior Notice of Termination*

MAG argues that OIAA separately breached the Agreement because it failed to provide the one-year prior written notice required by Section 2.4 of the Agreement. MAG MSJ at 19.  MAG contends that because OIAA then tried to buy out Section 2.4's notice period, it "knew what it was doing."  Id.

In opposition, OIAA argues that MAG's claim for breach on this basis fails for three reasons: (1) MAG did not present this claim as required by the GCA; (2) MAG did not file this claim within the two-year time period allowed under the GCA; and (3) Section 2.4's notice provision only applies if OIAA terminates the Agreement for convenience, but here the Agreement was terminated for cause.  MAG Opp. at 3.

In reply, MAG argues that "OIAA does not dispute its failure to give one-year written notice as required under Section 2.4.1 of the Agreement."  MAG Reply at 14. MAG argues that OIAA's argument that this claim was not properly presented fails because OIAA investigated the issue and MAG previously demanded OIAA's adherence to Section 2.4's notice period, which OIAA agreed to and then offered to buy out.  Id. at 14-15. According to MAG, the time bar does not apply because its amendment relates back to the date of the original pleading and because OIAA had actual notice.  Id. at 15. MAG argues that the Agreement was terminated for convenience and that OIAA's later expression of termination for cause "[a]t best … goes to damages; at worst, it is a disingenuous effort to manufacture a way to avoid its contractual obligations."  Id.

As an initial matter, the Court finds that, as a matter of law, MAG complied with the GCA's presentation requirements for its breach claim based on Section 2.4's notice provision.  The Court incorporates by reference the evidence presented in Part IV(A)(1) of this order.  Examining this evidence in the light most favorable to OIAA, the Court

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

finds that the contents of the correspondence between the parties in April and May 2021 is undisputed. This correspondence was "written notice that a claim for monetary damages exists and that litigation may ensue," constituting a "claim as presented" of the Section 2.4 notice provision breach under the GCA. See Phillips, 49 Cal. 3d at 709 (citations omitted). It is further undisputed that OIAA investigated the positions in this correspondence and that, throughout this correspondence, OIAA repeatedly proposed a buyout of Section 2.4's notice provision, demonstrating that it had, and attempted to take advantage of, an opportunity to settle the matter. Because this correspondence constituted a claim as presented and satisfied the purposes of the GCA as a matter of law, the Court finds that MAG is entitled to summary judgment on this element of its claim for breach of Section 2.4's notice provision. See Shirk, 42 Cal. 4th at 209 ("Timely claim presentation… is an element of the plaintiff's claim for relief."); Simms, 80 Cal. App. 5th at 401, n.3 (whether a letter is a claim under the GCA is a question of law).

Additionally, the Court deems MAG's claim for breach of Section 2.4's notice provision timely as a matter of law, because it relates back to the claims in MAG's original complaint, which was timely filed on June 16, 2021. The Court incorporates by reference its finding on this matter in Part IV(A)(1) of this order.

The Court next addresses OIAA's argument that its termination for cause eliminated its need to comply with Section 2.4's notice provision. The Court concludes that no provision of the Agreement provides that after giving one-year prior written notice of termination for convenience, OIAA is barred from terminating the Agreement for cause discovered thereafter. See generally Agreement. According to the Agreement, it "may be terminated for convenience by either party without cause, upon one year prior written notice to the other party delivered in accordance with this Agreement …." Agreement § 2.4. Accordingly, the Court concludes that the written notice provided on April 15, 2021, began the notice period but did not actually effect termination. As a result, the Court finds that summary judgment for MAG on this issue is not warranted, because though OIAA would have been obligated to honor Section 2.4's notice period had it only raised convenience as the basis for termination, it subsequently terminated for cause, pursuant to Sections 14.1 and 14.2. These provisions allow for immediate termination. Agreement §§ 14.1, 14.2. The Court concludes that the remaining question is whether there were in fact breaches that warranted a for-cause termination, and that this is a question for a jury, not properly decided on a motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

### c. OIAA Failed to Make the Requisite Termination Payment

Under the terms of the Agreement between the parties, a termination payment is due in the event of a termination for convenience, but not in the event of a termination for cause. See Agreement §§ 2.4.1, 14.1. This dispute arises from OIAA's initial termination for convenience on April 15, 2021, and the impact of its subsequent May 20, 2021, termination for cause on its obligation to pay termination costs. OIAA disputes its obligation to pay these costs because it contends that MAG decided not to continue as the lounge operator, because the obligation to pay no longer applied when it terminated the Agreement for cause, and if due, it paid these costs in the form of revenues MAG has improperly refused to return. MAG Opp. at 3.

MAG argues that "OIAA also independently breached the Agreement by failing to pay the Termination Costs required by Section 2.4.1." MAG MSJ at 19. MAG contends that the record shows that OIAA agreed it owed MAG termination costs by May 19, 2021, before this litigation began, and that OIAA has never disputed MAG's calculation of the termination costs. Id. at 20. MAG argues that OIAA has not paid any termination costs, and therefore breached the Agreement. Id.

In opposition, OIAA contends that MAG's claim for breach fails for three reasons: (1) MAG's own decision not to continue as lounge operator unless it retained the car parking services under the Agreement trumped OIAA's duty to pay termination costs; (2) Section 2.4.1 and OIAA's duty to pay termination costs no longer applied once the Agreement was terminated for cause; and (3) OIAA did actually pay termination costs prior to termination in the form of parking revenues belonging to OIAA that MAG has withheld. MAG Opp. at 3, 18.

In reply, MAG argues that none of OIAA's three contentions has merit. MAG Reply at 16. First, MAG argues that in OIAA's termination notice, it provided that both the lounge services and car parking services would terminate, and thus prior comments about the lounge operation not being independently viable do not change OIAA's obligations. Id. at 17. Next, MAG argues that OIAA has no authority to support its proposition that the subsequent termination for cause eliminated OIAA's obligation to pay termination costs. Id. MAG argues that even if the termination for cause is valid, it does not affect whether OIAA breached in this way because the Agreement preserves MAG's right to recover damages even in the event of a termination for cause. Id. at 18.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Finally, MAG contends that OIAA incorrectly argues that it was not required to pay termination costs because MAG "recaptured" its capital expenditures. Id.

The Court first looks to OIAA's argument that MAG itself decided not to continue as the lounge operator, and that OIAA's obligation to pay termination costs under Section 2.4.1 only applied if OIAA terminated MAG as lounge operator. MAG Opp. at 16. The Court concludes that a reasonable juror could find for OIAA on this question. In support of its motion, MAG points to the termination notice from April 15, 2021, wherein OIAA stated that "both the Lounge Concession and the Car Parking Services at Ontario International Airport (ONT) under the … Agreement will terminate." Dkt. 114-18 at 37. OIAA points to MAG's Protest Letter, dated February 23, 2021, in which MAG informed OIAA that "the lounges do not constitute a workable standalone business model." Dkt. 121-6 at 4. Additionally, in his deposition, "[w]hen asked if he had offered to keep MAG as the lounge operator, Cappell said that he had but that MAG [was not] interested." MAG SDF ¶ 6. The Court finds that this raises a genuine factual dispute as to whether MAG sought to terminate the lounge services or whether OIAA terminated them. Thus, the question of whether OIAA owes MAG the resulting termination costs is not properly adjudicated at this stage.

Next, as to OIAA's argument that it does not owe termination costs to MAG because the Agreement was terminated for cause, the Court concludes that triable issues of fact remain. As the Court concluded above, OIAA was able to terminate the Agreement for cause pending termination for convenience after one-year prior written notice was given on April 15, 2021. MAG argues that even if OIAA terminated for cause after its termination for convenience, because pursuant to Section 2.4.1, the termination costs come due on the thirtieth day after notice is given, the payment from OIAA to MAG was due on May 19, 2021. MAG Reply at 17. MAG contends that OIAA terminated the Agreement for cause on May 20, 2021, at which point the termination costs based on termination for convenience were already due and not excused by the subsequent termination for cause. Id. The Court finds that a reasonable juror could find that the termination costs obligation was eliminated by the termination for cause, and therefore that summary judgment on this issue is not warranted. Section 14.2 provides that termination pursuant Section 14.1:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES – GENERAL    'O'

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|----------|------|------|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

> shall be without prejudice to any remedy for arrears of payments due hereunder or breach of covenant, or damages for the balance of all fees payable hereunder through the full Term of this Agreement, or any other damages or remedies whatsoever, including without limitation, all direct, indirect, consequential, and all other damages whatsoever. Upon any termination pursuant to this Article XIV, [MAG] shall have no right to any reimbursements from [OIAA].

Agreement § 14.2. The Court concludes that it is not clear whether the termination costs, which are equal to an adjusted portion of MAG's improvement expenditures for the lounges and parking services, are considered damages or a reimbursement pursuant to the Agreement. Agreement § 2.4.1. If they are considered damages, MAG would be entitled to the payment after termination for cause, but if they are considered a reimbursement for MAG's improvements, MAG would not be entitled to the payment under Section 14.2. The Court finds that this is an issue of fact for a jury to consider, and is not properly adjudicated by the Court as a matter of law.

Lastly, the Court considers OIAA's defense that if it does owe termination costs, OIAA has already paid these costs in the form of monies held by MAG that should be paid to OIAA. MAG Opp. at 18. The Court concludes that the amounts owed by the parties to one another remain in dispute, thus it is not possible to adjudicate with this motion the ultimate question of which party owes the other and in what amount. The Court concludes that once there is an accounting of what is owed by each party to the other, any amount that MAG may owe to OIAA should be credited to reduce OIAA's debt to MAG, and if applicable, MAG's debt to OIAA.

Accordingly, the Court concludes that summary judgment in favor of MAG is not proper on the basis that OIAA breached the Agreement by failing to pay the requisite termination costs.

2.    OIAA's Breach of Contract Claim

According to OIAA, MAG was the party that was initially in breach of the Agreement, by not returning OIAA's overpayments to MAG, and thus OIAA was free to contract with whomever it chose. According to Sections 3.26, 4.10, and 4.11, the parties are obligated to engage in financial reconciliation and provide one another certain

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

accounting statements so that each party is aware of its financial obligations to the other. Agreement §§ 3.26, 4.10, 4.11. MAG argues that OIAA's claim for breach of contract is based upon a failure to make payments MAG allegedly owed, but that OIAA failed to engage in required reconciliation, and therefore, MAG was not on notice of what was allegedly owed. MAG MSJ at 20-21. MAG contends that it "made numerous attempts to engage OIAA in contractually required reconciliations of their financial accounting," and that though OIAA acknowledged its contractual obligation to participate, it did not. Id. at 20. MAG argues that OIAA's terminal notice stated that it was terminating the Agreement for convenience, not for cause, barring its breach of contract claim. Id. at 22.

In opposition, OIAA argues that MAG is not entitled to summary judgment on OIAA's claim for breach of contract for three reasons: (1) MAG knew the overpayment amount, so no reconciliation was necessary; (2) OIAA provided the reconciliation information requested in a letter dated May 13, 2021; and (3) if OIAA's conduct is found to excuse MAG's breach regarding overpayment, which it should not be, MAG has not shown that its other breaches were also excused. MAG Opp. at 3-4.

In reply, MAG argues that though $1,118,258, the amount it puts forth as at issue in its motion, is less than the overpayment OIAA claims in its opposition, MAG is regardless entitled to summary judgment "that it did not breach the Agreement by failing to pay any amount owed OIAA because OIAA never put MAG on notice of the specific amount." MAG Reply at 19.

The Court concludes that triable issues remain on OIAA's breach of contract claim. Taking all inferences in favor of OIAA as the Court must on MAG's motion for summary judgment, the Court concludes that there is a dispute of fact as to whether MAG was aware of the amounts it owed. The Court finds that a reasonable juror could conclude that MAG was at least on notice of the amounts it allegedly owed, and was given an opportunity to cure these bases for breach, at the time of the May 13, 2021 letter from OIAA, which provided the requested financial reconciliation. Additionally, OIAA relies on the declaration of Cappell wherein he states that "it was OIAA, not MAG, that consistently sought to engage in financial reconciliation; and it was MAG, not OIAA, that refused to provide the data necessary for such a reconciliation to occur." Dkt. 121 ¶ 19. On the basis of this claim and the May 13, 2021 letter, the Court concludes that there is at least a dispute of fact as to whether MAG was aware of the amounts it owed OIAA.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

The Court also restates its above conclusion that OIAA was permitted to terminate the Agreement for cause during the pendency of the one-year notice period initiated by the notice of termination for convenience, and thus the Court does not credit MAG's alternative argument that OIAA's breach claim is barred by its initial notice of termination for convenience. Accordingly, the Court concludes that summary judgment on this claim is unwarranted.

        3.    OIAA's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing

According to OIAA, MAG's conduct violated several implied duties in the Agreement, in addition to the alleged express breaches. In its complaint, OIAA alleges five ways in which MAG breached the implied covenant of good faith and fair dealing. These are: (1) that MAG agreed OIAA overpaid incremental turn-up revenues of $1,181,418, but refused to provide an offset for this overpayment in calculating the amounts owed between the parties, despite initial willingness to do so; (2) that MAG refused to substantively respond to OIAA's May 13, 2021 financial reconciliation; (3) that MAG "failed to acknowledge or pay the amount owed"; (4) that MAG "filed—and refused to voluntarily dismiss—a frivolous federal complaint against OIAA"; and (5) that MAG claimed that certain trade fixtures were capital expenditures chargeable to OIAA, and then after termination and after being reimbursed for the items, MAG repeatedly demanded to remove them from the Airport. OIAA Compl. ¶ 41. MAG disputes each of these bases for breach, either arguing that they are superfluous because they restate breach of contract claims, or that no such implied duty arises from the contract. MAG MSJ at 22-26. OIAA contends that factual disputes on these issues remain. MAG Opp. at 4.

The Court addresses in turn each of MAG's arguments directed to the five bases put forth for breach of the implied covenant in OIAA's complaint. See OIAA Compl. ¶ 41. Under California law, the implied covenant of good faith and fair dealing "is implied as a supplement to express contractual covenants to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Charpentier v. Los Angeles Rams Football Co., 75 Cal. App. 4th 301, 314 (1999). However, a claim for breach of the implied covenant of good faith and fair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

dealing must "go beyond the statement of a mere contract breach." <u>Careau & Co. v. Sec. Pac. Bus. Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1394 (1990).

First, the Court looks to the claim that MAG breached the implied covenant by failing to provide an offset for overpaid incremental turn-up revenues of $1,181,418. OIAA Compl. ¶ 41. The Court concludes that there is no implied duty to agree to an offset where the parties dispute whether or not the contract has been breached. As the Court previously concluded herein, to the extent MAG is holding money to which it is not entitled, these monies will serve as an offset. However, the Court finds that the contract terms do not give rise to an independent obligation to agree to an offset when a dispute as to what each party owes remains ongoing. Accordingly, the Court concludes that as a matter of law, this does not give rise to an implied duty and that summary judgment for MAG on this claim is warranted.

Next, the Court looks at OIAA's claim that MAG breached the implied covenant by failing to respond to financial reconciliation. While the Court acknowledges that in its order denying the motion to dismiss on February 6, 2023, it sustained OIAA's claim for breach of the implied covenant of good faith and fair dealing, that was informed by the standard that on a Rule 12(b)(6) motion the Court must take all allegations as true. <u>See</u> <u>MAG II</u>, dkt. 35. However, when viewed in light of the Agreement, it appears that the duty to reconcile payments is set forth in the Agreement. Section 3.26 defines Car Parking Revenue Allocation, with Section 3.26.5 setting out when payments are due and Section 3.26.6 stating what kind of annual statements must be provided. Agreement §§ 3.26, 3.26.5, 3.26.6. Section 4.10 requires MAG to maintain certain books and records in compliance with generally accepted accounting principles. Agreement § 4.10. Pursuant to Section 4.11, MAG is required to provide OIAA with an annual report of its gross revenues, with Sections 4.11.1-4.11.4 setting out the requirements of what the annual report must include. Agreement §§ 4.11, 4.11.1-4.11.4. Indeed, former OIAA Chief Financial Officer John Schubert ("Schubert") acknowledged the contractual requirement to participate in financial reconciliation in his deposition. Dkt. 114-14 at 28:1-5. When asked "[t]he contract calls for both MAG and OIAA to exchange statements for purposes of reconciling accounts; right?" Schubert responded, "[y]es." <u>Id.</u> Accordingly, it appears that the parties are required to engage in financial reconciliation by the terms of the Agreement, rather than by an implied covenant of good faith and fair dealing. Summary judgment for MAG is therefore warranted on this theory.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|-------------------------------------------------------------------|------|----------------|
| Title    | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Third, the Court examines the claim that MAG breached the implied covenant when it "failed to acknowledge or pay the amount owed." OIAA Compl. ¶ 41. As MAG points out in its motion, and OIAA fails to meaningfully contest, this claim is duplicative of OIAA's express breach of contract claim. Accordingly, it cannot serve as the basis for a claim for breach of the implied covenant, which is a supplement to express terms. The Court concludes that summary judgment for MAG on this theory is also appropriate.

Fourth, OIAA contends that MAG breached the implied covenant by filing its initial "frivolous" lawsuit. Id. The Court finds that the Agreement's terms do not give rise to any implied duty not to file suit, nor does OIAA point to any relevant terms on which it hinges this duty. Indeed, OIAA does not address MAG's argument on this point in its opposition. See generally MAG Opp. To the extent OIAA's argument rests on the notion that there is an implied duty not to file a "frivolous federal complaint," and that this complaint was frivolous because it was originally dismissed for lack of subject matter jurisdiction, the Ninth Circuit, in a memorandum disposition, reversed the decision to dismiss the complaint on diversity grounds and remanded it to this Court. Dkt. 27. Accordingly, for both of these reasons, the Court concludes that OIAA's claim for breach of the implied covenant is not supported on this basis. Summary judgment for MAG pursuant to this theory is granted.

Last, the Court looks at OIAA's claim that MAG breached the implied covenant by demanding to remove trade fixtures that it allegedly initially classified as capital expenditures, for which OIAA claims it reimbursed MAG, and that MAG subsequently reclassified the fixtures as removable "'personal property' trade fixtures." OIAA Compl. ¶ 41. The Court finds that the classification and treatment of fixtures is comprehensively covered by Section 6.11 of the Agreement, which specifies that "trade fixtures not permanently affixed" do not become the property of OIAA upon termination. Agreement § 6.11. Accordingly, the Court finds that any alleged breach is based on this express provision, rather than on an implied duty to which it may give rise. Therefore, as a matter of law, OIAA cannot state a claim for a breach of the implied covenant on this basis, and summary judgment for MAG is appropriate.

The Court concludes that none of the five theories put forth by OIAA for MAG's breach of the implied covenant of good faith and fair dealing is viable as a matter of law.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|----------|------------------------------------------------------|------|----------------|
| Title    | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Accordingly, summary judgment on OIAA's claim for breach of the implied covenant is granted in MAG's favor.

    4.    <u>OIAA's Claim for "Common Counts"</u>

According to OIAA, even if the parties did not have an enforceable contract, MAG owed OIAA's monies under this alternative theory. MAG contends that neither of OIAA's legal theories for its claim for common counts, open book account and money had and received "is viable in light of the undisputed existence of the Agreement." MAG MSJ at 26. MAG contends that OIAA cannot recharacterize its contract claim as a common count. <u>Id.</u> at 27. Even if the claim were not duplicative, MAG argues, "OIAA cannot present any evidence that MAG agreed to create an open book account." <u>Id.</u> MAG argues that OIAA's money had and received claim also fails because it is based on the existence of a quasi-contract and such a claim cannot be brought when an express agreement exists. <u>Id.</u> at 28.

In opposition, OIAA contends that it is permitted to assert the common counts claim in the alternative and that it has alleged sufficient facts to demonstrate that the course of dealing between the parties established an open book account. MAG Opp. at 4. OIAA argues that "OIAA's recordkeeping creates a triable issue as to the existence of an open book account and a claim for money had and received." <u>Id.</u> at 25.

In reply, MAG argues that "[a]lthough a party is entitled to plead alternative theories, this matter is well past the pleading stage." MAG Reply at 24. MAG contends that to succeed on an open book theory, the Court would have to find no valid contract, which is impossible since the parties both assert breach of contract claims. <u>Id.</u> at 24, n.6. MAG argues that OIAA's money had and received claim fails because OIAA "makes no effort to refute MAG's argument[s]," and that OIAA therefore concedes it cannot carry its burden on this claim. <u>Id.</u> at 26.

The Court concludes that OIAA is entitled to maintain its alternative theories, and that if it prevails at trial, it must at that point make an election between its theories for recovery. The Court also finds that triable issues of fact remain as to whether the parties established an open book account for money due and whether MAG is indebted to OIAA for money had and received by MAG for the use of OIAA. Pursuant to California law, parties can establish an open book account through conduct. <u>Eloquence Corp. v. Home</u>

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:21-cv-04909-CAS(RAOx); consolidated with 5:22-cv-01926-CAS(RAOx) | Date | April 22, 2025 |
|---|---|---|---|
| Title | Mag US Lounge Management LLC v. Ontario International Airport Authority et al | | |

Consignment Ctr., 49 Cal. App. 5th 655, 666 (2020) (citing Warda v. Schmidt, 146 Cal. App. 2d 234, 303 (1956)). The Court concludes that issues of fact remain as to whether the parties did maintain such an account, crediting and debiting the amounts owed in each direction. See dkt. 122 (declaration of Schubert, who states that "OIAA and MAG kept account of the monies owed to and from one another under the [A]greement, including amounts MAG owed to OIAA for overpayment of parking revenues"). The Court finds that summary judgment on the claim for an open book account is not appropriate.

The Court concludes that disputes also remain as to OIAA's money had and received claim. The factual disputes that underlie this claim are identical to those that underlie OIAA's breach claim: that MAG retained certain sums it should have remitted to OIAA. OIAA Compl. ¶ 45. Given that the Court has concluded this issue remains in dispute, the Court finds that summary judgment on this claim is unwarranted.

**V.    CONCLUSION**

In accordance with the foregoing, the Court **GRANTS IN PART** and **DENIES IN PART** OIAA's motion. The Court **DENIES** OIAA's motion for summary judgment on MAG's claim for breach of contract based on Section 2.4's notice provision. The Court **GRANTS** OIAA's motion for summary judgment on MAG's fourth, fifth, and sixth claims.

The Court **GRANTS IN PART** and **DENIES IN PART** MAG's motion. The Court **GRANTS** MAG's motion to the extent it seeks summary judgment on its breach of contract claim based on Section 5.10.1 and **GRANTS** MAG's motion for summary judgment on OIAA's implied covenant of good faith and fair dealing claim. The Court **DENIES** MAG's motion to the extent it seeks summary judgment on its breach of contract claim based on failure to comply with Section 2.4's notice provision and failure to make the termination payment. The Court **DENIES** MAG's motion for summary judgment on OIAA's breach of contract claim and OIAA's common counts claim.

IT IS SO ORDERED.

| | 00 | : | 00 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |